# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| OLIVIA BROUSSARD and JANICE GOURD,  )<br>)<br>Plaintiffs,  )<br>)<br>vs.  )<br>)<br>WELLS BLOOMFIELD, et. al.  )<br>)<br>Defendants.  )<br>_____) | 3:05-CV-0532-RAM<br><br>**AMENDED**<br>**MEMORANDUM DECISION**<br>**AND ORDER** |

The court amends and supercedes its prior Memorandum Decision and Order (Doc. #23) as follows:

Before the court is Defendants Wells Bloomfield and Carrier Commercial's Motion for Summary Judgment. (Doc. #16, #17). Plaintiffs opposed the motion (Doc. #20) and Defendants replied (Doc. #22).[1]

## BACKGROUND

Plaintiffs Olivia Broussard and Janice Gourd allege violations of Title VII for sexual harassment due to a hostile work environment. (Doc. #1). Plaintiff Gourd also alleges that she was retaliated against and suffered a constructive discharge after she complained about the harassment, also in violation of Title VII. (*Id.*).

Plaintiff Gourd was formerly employed at Defendants Wells Bloomfield. (*Id.*). She began working there on June 1, 2004. (*Id.*). Plaintiff Broussard remains employed by Defendant. (Doc. #17,

---

[1] Plaintiffs' opposition does not appear to be double spaced. Under Local Rule 10-1 "[e]xcept for exhibits, quotations, the caption, the title of the court, and the name of the case, lines of typewritten text shall be double-spaced ..." LR 10-1. Counsel is urged to adhere to this rule in future filings.

Exh. F). She began working there on or about November 20, 2000. (Doc. #1). In their complaint Plaintiffs allege that "throughout a substantial period of their employment with [D]efendants" Plaintiffs were subject to sexually hostile, offensive conduct and that a reasonable woman, similarly situated, would have found the conduct sexually hostile and offensive. (*Id.*). Plaintiffs allege that the main perpetrator of the offensive conduct was Defendant's then employee Abismal Aguirre, a.k.a. "Orlando." (*Id.*). Mr. Aguirre allegedly made comments such as: "if I had a thousand dollars in this country I could get any girl I want and fuck them"; "I'll fuck you in the ass with a stick and kill you"; and "we kill people like that in Guatemala." (*Id.*). Plaintiffs further allege that Mr. Aguirre regularly referred to women as "bitches" and that he used his masculinity to intimidate the Plaintiffs and other women. (*Id.*). The complaint alleges that Mr. Aguirre behaved as described "on a regular basis, in an open manner, with little or no apparent fear of any adverse repercussions on the premises of [D]efendants." and that Defendants knew or should have known of the "nature and frequency of Mr. Aguirre's conduct and statements, but failed to take prompt, adequate remedial action." (*Id.*). Plaintiffs allege that they and other employees complained of Mr. Aguirre's conduct. (*Id.*).

## DISCUSSION

**A.  Standard for Summary Judgment**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id*.

**B.     Sexual Harassment under Title VII - Hostile Work Environment**

Title VII makes it unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of ... sex." 42 U.S.C. § 2000e-2(a)(1). Sexual harassment in the form of a hostile work environment constitutes sex discrimination. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). To prevail on a hostile work environment claim the plaintiff must show that the workplace was objectively hostile or abusive and that plaintiff subjectively perceived it as hostile or abusive. *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864, 872 (9th Cir. 2001). The plaintiff must also show that the harassment took place "because of sex." *Id.*

To determine if a workplace is sufficiently hostile or abusive to violate Title VII the court must look at "all the circumstances" including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not violate Title VII. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)(internal citations omitted).

The EEOC guidelines make clear that where the plaintiff suffered harassment at the hands of a co-worker the employer is liable if the "employer (or its agents or supervisory employees) knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action." 29 C.F.R. § 1604.11(d). A plaintiff may show the that employer was aware of harassment by a co-employee by showing that previous employees had made similar complaints about the harasser, thus putting the employer on notice. *See Ferris v. Delta Air Lines, Inc.,* 277 F.3d 128, 136 (2nd Cir. 2001)(where, in a case where plaintiff alleged she was raped by her co-worker, issue of material fact existed regarding whether airline, which had notice of male flight attendant's previous behavior, was negligent in not protecting female flight attendants from him). Employer liability for harassment by co-employees is based on direct liability for negligence in failing to take adequate remedial measures, not vicarious liability for the harassing actions of its employees. *Swenson v. Potter*, 271 F.3d 1184, 1191 (9th Cir. 2001). If the employer fails to take appropriate action after learning of an employee's sexual harassment of another employee, then the employer is deemed to have adopted the conduct, just as if it had been authorized affirmatively as the employer's policy. *Id.* at 1192. Thus, in order to survive summary judgment Plaintiffs must show (1) that the employer *knew or should have known* of the harassment, and (2) that the employer *failed to take appropriate corrective action*. *Mockler v. Multnoman County*, 140 F.3d 808, 812 (9th Cir. 1998).

<u>Whether Plaintiff Gourd's Workplace Was Hostile</u>

Plaintiff Gourd alleges that comments made by her co-worker, Mr. Aguirre, made her workplace objectively hostile and that she perceived it as hostile. Defendants do not seriously dispute

Plaintiff's own subjective perceptions that the workplace was hostile. However, Defendants argue that Plaintiff cannot establish that the workplace was objectively hostile due to the "lack of frequency of the discriminatory conduct as well as the lack of severity of the alleged conduct." (Doc. #16).

Defendant acknowledges that Mr. Aguirre made inappropriate remarks about Plaintiff's husband's sexual abilities and called Plaintiff a "fucking bitch". (Doc. #16, p. 3). However, contrary to Defendants contentions that the harassment was limited to these two discrete incidents, Plaintiff testified in her deposition that besides the incidents Defendant acknowledges, Mr. Aguirre also (1) told Plaintiff that she needed to "come and fuck a real stud like me" (Doc. #20, Exh. 1, p. 122), (2) stated to Plaintiff that women were not respected in his country (El Salvador) and "why the fuck should [I] respect women here" (*Id.*), (3) threatened to physically hurt Plaintiff if she complained of him again (*Id.* at 129), (4) called Plaintiff a "puta" ("whore" in Spanish)(*Id.* at 129-30), (5) exposed himself to her (*Id.* at 137), (6) described to her prior sex acts in which he engaged with a previous employee while at work (*Id.* at 150), (7) described the sex acts he wanted to perform on another female employee (*Id.* at 247), (8) called her a "cunt" (*Id*. at 212), (9) referred to women as being like dogs (*Id*. at 248), and (10) told her to "fuck off" (*Id*. at 180, 200). Further, Plaintiff testified in her deposition that after the harassment began, working with Mr. Aguirre upset her so much that she was reduced to tears, begged not to work with Mr. Aguirre, and yet was still forced to work directly with him. (*Id*. at 152-53). A reasonable jury could find that these events constitute a pattern of ongoing harassment severe enough to alter the terms or conditions of her employment and that a reasonable person would find it hostile.

<u>Whether Plaintiff's Broussard's Workplace was Hostile</u>

Like Plaintiff Gourd, Plaintiff Broussard also alleges that comments made by her co-worker, Mr. Aguirre, made her workplace objectively hostile and that she perceived it as hostile. Defendants argue that there is no dispute of material fact regarding whether Plaintiff found her workplace subjectively hostile and that as a matter of law, the evidence shows that Plaintiff did not find it subjectively hostile. (Doc. #17). Defendants also argue that Plaintiff cannot establish that the workplace was objectively hostile. (*Id.*).

In support of their argument that Plaintiff Broussard did not find the workplace subjectively hostile, Defendants present evidence that Plaintiff Broussard and Mr. Aguirre maintained a friendly relationship at work (Doc. #17, Exh., p. 50). However, Plaintiff presents evidence that she was "scared to death" to work with Mr. Aguirre. (Doc. #20, Exh. 7, p. 59). This creates a genuine dispute of material fact regarding whether Plaintiff found her workplace subjectively hostile due to Mr. Aguirre's conduct. Based on the evidence presented, a reasonable jury could conclude that the evidence shows that Plaintiff subjectively felt that the workplace was hostile.

Defendants argue that Plaintiff cannot establish that the workplace was objectively hostile since Mr. Aguirre allegedly only made one derogatory comment (that in Mr. Aguirre's country "they kill people like you") to Plaintiff and one comment does not create a pattern of hostile comments. (Doc. #17). However, Plaintiff presents evidence that Mr. Aguirre also made other comments to her: (1) that he could get other women to have sex with her if he was in his home country (Doc. #20, Exh. 7, p.50), (2) that if he were "president, I'd take people like you [lesbians], fuck them in the ass with a stick, and kill them" (*Id.* at 54), (3) about Plaintiff's breasts (*Id.* at 96-97), and (4) described his sexual activities with a previous employee of Defendant's (*Id.* at 102-104). A reasonable jury could find that these events constitute a pattern of ongoing harassment severe enough to alter the terms or conditions of her employment and that a reasonable person would find it hostile.

<u>Whether Defendants knew or should have known of the harassment</u>

Next we consider whether Defendants knew or should have known of the harassment and yet failed to take "immediate and appropriate corrective action." 29 C.F.R. § 1604.11(d). Both Plaintiffs alleges that Defendants knew or should have known of Mr. Aguirre's harassment of them.

Defendants admit that Plaintiff Gourd informed them of the harassment in July of 2004 and then again in August of 2004. (Doc. #16). Defendants claim that Plaintiff Broussard never complained about Mr. Aguirre until they were investigating his conduct following Plaintiff Gourd's final complaint about him. (Doc. #17). Defendants contend that they responded swiftly to these allegations, warning Mr. Aguirre after the first incident and then, after the second complaint, suspending him pending an investigation and ultimately firing him. (Docs. #16, #17). However,

1   Defendants do not provide the court with any admissible evidence on this point. All that is attached
2   in support of these contentions is some paperwork that appear to be from the EEOC proceedings. The
3   documents are signed by "John Foley," who is identified therein as the "Assistant General Counsel."
4   The statements within this document are hearsay, since they do not appear to be based on the personal
5   knowledge of Mr. Foley. It is nothing more than Defendants' account of what happened, not factual
6   support for Defendants' position. In order to serve as proper support for the motion for summary
7   judgment it would need to be evidence that could be admissible at trial, such as a business record or
8   an affidavit. The *admissible* evidence that Defendants attached shows that Mr. Aguirre was
9   reprimanded and suspended in August of 2004 and that he had two previous disputes with female
10  employees "over personal issues" (though it is not clear whether these so-called "personal issues" also
11  concerned sexual harassment allegations). Defendants also present evidence showing that Mr. Aguirre
12  was discharged on August 19, 2004 for "violation of sexual harassment policy." (Doc. #16, Exh. D).
13       Plaintiffs' evidence shows that Plaintiff Gourd complained to Defendants' managerial staff
14  another time, after the second complaint but before the final complaint that apparently led to Mr.
15  Aguirre's terminations. Several days after the first incident (where Mr. Aguirre made the comments
16  regarding Plaintiff's husband) Plaintiff Gourd complained to her supervisor, Jeanette, and to shop
17  steward, Richard, about Mr. Aguirre. (*Id.* at 137-38, 140). This complaint was made after Mr. Aguirre
18  partially exposed himself to Plaintiff Gourd. (*Id.*). Plaintiff's testimony also provides evidence that
19  she reported this incident and the prior one (involving Mr. Aguirre's comments about Plaintiff's
20  husband) to Jim Rich, defendant's production manager. (*Id.* at 141-143). Mr. Rich told Plaintiff
21  Gourd to "let us know" if Mr. Aguirre "does it again." (*Id.*). When Plaintiff expressed her desire to
22  go to HR to report the problem further Mr. Rich told her "don't worry about it, Janice. I'm going to
23  take care of it." (*Id.*). A few days later Plaintiff stopped by the office of Mike May, Defendant's
24  president, and explained to his secretary why she wanted to speak with him. (*Id.* At 146). The
25  secretary informed Plaintiff Gourd that Mr. May was not in. (*Id.* at 146). Plaintiff also testified that
26  she complained to her supervisor RJ (Roni Jo Barker) after Mr. Aguirre starting telling Plaintiff about
27  a sex act a former female employee had performed on him on the work premises. (*Id.* at 151). Only
28

7

on this occasion was Plaintiff permitted to move to another work station, away from Mr. Aguirre. (*Id.*).

Plaintiff Broussard presents evidence that she did not report Mr. Aguirre's harassment of her because she was aware that when previous complaints had been made against Mr. Aguirre Defendants failed to take significant remedial action. (Doc. #20, Exh. 7, p. 52, 99, 132).

Plaintiffs also present evidence that Defendants should have known about Mr. Aguirre's harassment of its female employees because of previous complaints that had been made against him. For example, another employee, Lorena Reyes, testified that she had complained of Mr. Aguirre's sexual harassment in 2002. (*Id.* at Exh. 2, p 23-25). Further, Claudia Arrellano testified that Mr. Aguirre called her a "whore", used obscenities in her presence, and hit her with a door. (*Id.* at Exh. 5, 22-30). Ms. Arrellano complained about being harassed by Mr. Aguirre more than a year before he was finally fired. (*Id.* at 32-36). Finally, Mr. Aguirre's former supervisor, Robert Nauman, testified that Mr. Aguirre frequently and openly used terms such as "puta" and "bitch" throughout the entire time that Mr. Nauman supervised Mr. Aguirre. (*Id.* at Exh. 3, 47-48).

Given the evidence before the court, we cannot say that, as a matter of law, Defendants response to the harassment qualifies as "appropriate corrective action." *Mockler*, 140 F.3d at 812. In fact, some of the evidence suggest that Defendants' managers acquiesced to the harassment by failing to do anything when they first became aware of Mr. Aguirre's pattern of conduct. According to some of the testimony, Defendant's managers knew about Mr. Aguirre's pattern of harassment before he ever harassed either Plaintiff. A jury could find that Defendants were negligent in not taking earlier action to address the issues surrounding Mr. Aguirre's allegedly harassing conduct. *See Ferris,* 277 F.3d at 136. Although Plaintiff's harasser, Mr. Aguirre, was eventually fired, a reasonable jury could find that Defendant's action was not appropriate in terms of timing, given the multiple previous complaints.

**C.    Retaliation**

Under Title VII the anti-retaliation provision "covers those (and only those) employer actions that would have been materially adverse to reasonable employee ...[T]hat means the employer's actions

must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. V. White*, ___ U.S. ___, ___, 126 S. Ct. 2405, 2409 (2006). This is an objective rather than a subjective test. *Id.* at ___, 126 S. Ct. at 2417. Even under the pre-*Burlington Northern* standard, which was more stringent, a campaign of hostility and harassment by coworkers may be actionable where management acquiesced and the hostility was sufficiently severe. *Ray v. Henderson,* 217 F.3d 1234, 1245 (9th Cir. 2000)(summary judgment denied where Plaintiff presented evidence that after complaining about the treatment of women at his workplace he was targeted for verbal abuse, called a "troublemaker" by his supervisors during staff meetings, subjected to a variety of pranks, and falsely accused of misconduct); *Gunnell v. Utah Valley State College*, 152 F.3d 1253 (10th Cir. 1998)(co-worker hostility or retaliatory harassment, is sufficiently severe, may constitute 'adverse employment action' for purposes of retaliation claim); *see also Noviello v. City of Boston*, 398 F.3d 76, 89 (1st Cir. 2005)(collecting cases).

Here, Plaintiff Gourd presents evidence that after she complained about Mr. Aguirre she was transferred to another department while Mr. Aguirre stayed in the same department.[2] (Doc. #20, Exh. 1, p 170). Then Plaintiff was moved back to the original department because, apparently, her new supervisor did not want her in his department. (*Id.* at 171). Mr. Rich also singled Plaintiff out during a meeting where sexual harassment was discussed; laughing at the sexually harassment scenario described in the meeting. (*Id.* at 180-81). Plaintiff presents other evidence of retaliatory incidents: her time cards were ripped up and scattered (*Id.* at 202), after she complained to Nevada Equal Rights Commission she heard one of her managers say that she is "nothing but trouble" (*Id.* at 207), Plaintiff was no longer permitted to work overtime, even though temporary employees were given such an opportunity and even though she worked a lot of overtime before she reported Mr. Aguirre (*Id.* at 210), she was subjected to maltreatment by her co-employee, Jesus, a friend of Mr. Aguirre's, who refused to cooperate with her on work duties (*Id.* at 214-216), and after she reported Jesus' behavior to her

---

[2] The court notes that in the section addressing the retaliation claims Plaintiffs' opposition fails to include any citation to the exhibits. The court has undertaken to locate the portions of the exhibits that support the facts listed in this portion. However, counsel is strongly warned to avoid such omissions in the future.

9

1 manager, Ms. Barker, her manager suggested she find other employment (*Id.* at 202). Thus, under the relevant law there exists a genuine issue of material fact regarding whether Plaintiff Gourd suffered retaliation after she brought forth the allegations of sexual harassment.

**D.     Constructive Discharge**

Constructive Discharge occurs when one's working conditions "deteriorate, as a result of discrimination, tot he point they become sufficiently extraordinary and agregious" to compel a reasonable employee to quit. *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000). In order to state a claim for constructive discharge due to a hostile work environment, a plaintiff must show that the working conditions were so bad that a reasonable person in plaintiff's shoes would have felt compelled to resign. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 145-46 (2004). The determination whether conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question left to the trier of fact. *Watson v. Nationwise Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987). However, "Unless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." *Perry v. Harris Chernin, Inc.,* 126 F.3d 1010, 1015 (7th Cir.1997)(cited with approval by *Reilly v. Nevada*, 2007 WL 983848 (D. Nev. 2007)(only the Westlaw citation is currently available); *accord Landgraf v. USI Film Prods..*, 968 F.2d 427 (5th Cir. 1992), *aff'd in part on other grounds*, 511 U.S. 244 (1994) ("[t]o prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to proved hostile working environment.").

Defendants argue that the fact that Plaintiff was employed with Defendants for more than two months after Mr. Aguirre was terminated shows that the harassment had no bearing on her resigning from Defendants' employ. (Doc. #16). This argument neglects to consider that retaliation for reporting sexual harassment is a violation of Title VII separate from the initial harassment reported. *See Burlington*, ___ U.S. ___, 126 S. Ct. 2405. However, even considering the evidence of retaliation, the conduct alleged by Plaintiff is not, as a matter of law, so beyond ordinary discrimination or retaliation that a reasonable person would feel compelled to resign. Had Plaintiff's supervisors

urged her to resign multiple times, our conclusion might be the opposite. However, the evidence here shows that her supervisor only made that statement one time and that it was accompanied by the comment "you know, Janice ... you're a good worker, but I think you'd be happier somewhere else." (Doc. #20, Exh. 1, p. 213). Thus, given the combination of facts as shown by the evidence currently before the court, Plaintiff's claim of constructive discharge cannot survive.

**E.     Ellerth/Faragher Defense**

Defendant's argument that *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742 (1998). shields them from liability lacks  merit.  The *Ellerth* affirmative defense has two prongs: (1) "that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and (2) "that the plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* at 765.  *Ellerth* only applies to situations where the plaintiff alleges that he or she was harassed by a supervisor with immediate, or successively higher, authority over the employee. *See Ellerth*, 524 U.S. at 765.  No case has been brought to the court's attention indicating that *Ellerth* would apply to the retaliatory, as distinguished from the sexually harassing, actions of supervisors. In fact, in *Burlington Northern* the Supreme Court recently pointed out that *Ellerth* does not even mention Title VII's anti-retaliation provision at all. *Burlington Northern*, ___ U.S. at  ___, 126 S. Ct. at  2414*. Ellerth* explicitly contemplates sexual harassment claims, not retaliation claims.

Further, even if the *Ellerth* defense were available for retaliation claims, Defendants have not shown that no genuine issues of material fact exist regarding whether their conduct meets the requirements of *Ellerth*.  Defendants argue that the fact that they had a sexual harassment policy satisfies the first prong of this test. (Doc. #16, Exh. A).  The court disagrees. Although whether the employer has a stated anti-harassment policy is relevant to the first element of the defense, *see id.*, where, as here, the evidence suggests that there is a dispute of material fact regarding whether that policy was enforced, a defendant may not prove that they "exercised reasonable care to prevent and correct promptly any sexually harassing behavior" by simply submitting a copy of their written sexual harassment policy.

**CONCLUSION**

For the reasons set forth above, Defendants' Motion for Summary Judgment on Plaintiff Gourd's claims (Doc. #16) is **GRANTED** as to the constructive discharge claim and **DENIED** as to all others. Defendants' Motion for Summary Judgment on Plaintiff Broussard's claims (Doc. #17) is **DENIED**.

DATED:   June 13, 2007.

_____
UNITED STATES MAGISTRATE JUDGE